## ELICK v. SCHILLER.

No. 12213.

Court of Civil Appeals of Texas. Galveston.

Oct. 12, 1950.

Rehearing Denied Dec. 7, 1950.

W. I. Hill of Bellville, and Price, Guinn & Wheat, of Houston (J. V. Wheat and O. J. Cadwallader, Jr., of Houston, of counsel), for appellant.

C. G. Krueger, Charles L. Krueger of Austin, and C. D. Duncan, of Bellville, for appellee.

MONTEITH, Chief Justice.

Appellee, Mrs. Olga Schiller, brought this action against appellant, J. J. Elick, to establish a constructive trust in certain oil royalties held by Elick and for judgment against appellant and C. J. Marik for damages for the market value of other royalties assigned to other parties by appellant.

In his answer appellant denied the facts alleged to give rise to a constructive trust in favor of appellee and alleged that appellee's cause of action for damages, if true, were barred by the two-year statute of limitations under Article 5526, Section 4, Revised Civil Statutes. C. J. Marik pled that he was an innocent purchaser for value.

Appellant relies for reversal on two points of assigned error in which he contends that appellee's testimony that a constructive trust was created by virtue of the fact that appellant was acting as the agent of appellee and her deceased husband at the time of the purchase and sale of said 242 acres of land was contrary to the express terms of the written instruments under which he acquired said land which were binding on appellee and that the most of such testimony of such agency was either hearsay or the inadmissible opinions of witnesses. He further contends that appellee's claim for damages was barred by the two-year statute of limitations.

Appellee and her deceased husband, Leo Schiller, became the owners of the 242 acres of land in Austin County, Texas, involved in this suit by deed dated March 14, 1922. They sold half of the minerals under the land in 1930. On December 18, 1945, they executed a deed conveying said land including the minerals thereunder to appellant and deposited said deed with appellant's earnest money check for the sum of $200 and an agreement executed by Leo Schiller as vendor and J. J. Elick as purchaser in escrow with the First National Bank of Bellville, Texas. Under the escrow contract Schiller agreed to sell and appellant agreed to purchase said 242 acres of land for the sum of $25 per acre. The contract provided that 1/2 of the minerals under the land had been sold but that the other 1/2 of the minerals was owned by vendors and would be conveyed by the deed to the purchaser and that a warranty deed to said land executed by the seller and his wife was made a part of the agreement as evidence of good faith and that it would be returned to the seller in the event the sale was not consummated. The First National Bank of Bellville was made escrow agent for the purpose of evidencing the receipt of the earnest money. Appellee, Olga Schiller, did not sign the escrow agreement.

The deed and escrow agreement between Leo Schiller and appellant remained in the bank until January 22, 1946 when Elick gave the bank his personal check for $5850 and the bank turned over said deed to him and credited the account of Leo and Olga Schiller with the sum of $6050, being $25 per acre for said 242 acres of land. Appellee contends that she did not receive or make use of this money.

On January 22, 1946, appellant executed and delivered a deed to said land to G. C. Yelderman and received from him a check for $6,050. In this deed appellant reserved in himself a 1/32 non-participating royalty in said land. The deed provided that it was subject to any oil, gas and mineral leases and/or mineral and royalty deeds theretofore made by prior owners.

On January 23 1946, appellant had said deed recorded and paid the amounts due for the abstract to said land and for the revenue stamps on the deed from the Schillers to him.

G. C. Yelderman to whom appellant transferred said land testified that he had had no dealings with Leo Schiller prior to the purchase of said land and he was permitted to testify over appellant's objections that he "got an impression from Elick that the Schillers were insisting on reserving the royalty for themselves."

Appellee testified that she heard her husband tell appellant to find a purchaser for said land. When questioned as to whether she knew what minerals were outstanding in herself and Leo Schiller at the date of the deed to appellant she stated that she thought it was a 1/2; "my husband attended to all those matters."

Over appellant's objections she was permitted to testify that "they were always under the impression that they had sold their land to Dr. Yelderman and that they always wanted to keep back some of their royalties."

Article 7425b—7, Vernon's Ann.Civ.St. provides that a trust in relation to or consisting of real property shall be created, established or declared by written instrument.

■ In the case of Mills v. Gray, 147 Tex. 33, 210 S.W.2d 985, it was held by the Supreme Court of this state that a constructive trust may be created by parol if the transfer was procured by fraud, duress, undue influence or mistake or if the transferee at the time of the transfer was in a confidential relation to the transferor.

In the instant case appellee alleged that appellant was an agent of herself and her deceased husband for the purpose of selling their land. However, in this case the agency depended entirely upon parol evidence contrary to the express provisions of a deed from the Schillers to appellant and an escrow agreement which expressly stated that the vendor had sold said land to the purchaser for a consideration of $25 per acre.

In this case there is direct evidence that said deed from the Schillers to Elick refers to him as grantee and the written contract calls him the purchaser and required him to deposit in escrow $200 of his own funds and to pay to the Schillers $5850 subject to the acceptance of the title. It is undisputed that the vendors did not trust appellant with the deed to the land but on the contrary required that it and the escrow agreement be deposited in the bank at Bellville.

■ It is a well established rule of law in this state that a contract is binding on those who sign it in the absence of a showing that the signature was obtained by trick or artifice.

In the case of W. L. Macatee & Sons v. Chambers, Tex.Civ.App., 69 S.W.2d 486, affirmed Indemnity Insurance Co. of North America v. W. L. Macatee & Sons, 129 Tex. 166, 101 S.W.2d 553, 556, it was held that: "Every person having capacity to make a contract, in the absence of fraud, misrepresentation, or concealment, must be held to have known what the words used in a contract made by him were, and to have known their meaning; and he must also be held to have known and fully comprehended the legal effect of the contract which the words used made."

In the instant case while appellee did not join in the written escrow agreement, she is here seeking to ingraft a constructive trust

upon a deed executed by her and her husband by reason of an alleged prior oral agreement between appellant and her deceased husband. Appellee testified that she was told nothing about the transaction at the time of the transaction except that her husband told her to "sign that paper" and the notary public who took her acknowledgment showed her the line on which to sign. She testified that appellant had "got me and my husband * * * to sign a paper that he had, a writing to sell the place".

■ Under the above authorities, whether her husband was acting as appellee's agent or whether he was merely making an agreement for her as a third party beneficiary, she cannot, we think, recover on the grounds that a constructive trust was created without subjecting the alleged oral agreements to the rules of evidence applicable thereto.

■ It is, we think, obvious that in the event appellee's husband was her agent in the transaction, she was bound by the rule announced in 3 C.J.S., Agency, § 275, page 209, which provides that: "Where a principal accepts a contract made by the agent, he takes it as the agent made it, and subject to all equities and defenses arising out of the conditions thereof, and the means and instrumentalities by which the agent procured it, even though the agent acted without authority or in excess of his powers."

■ It is the settled law in this State that to overcome the presumption that the grantee in a deed is the owner and to engraft a parol trust in the deed the person asserting such trust has the burden of showing the trust by clear, satisfactory and convincing proof thereof, citing the cases of Jones v. Siler, 129 Tex. 18, 100 S. W.2d 352, 355, and authorities cited. Clayton v. Ancell, supra, 140 Tex. 441, at page 447, 168 S.W.2d 230 at page 233.

■ It is also an established rule that a person seeking to establish conspiracy and fraud must do so by full, clear and satisfactory proof and not by disconnected circumstances which may be as consistent with the lawful purpose as one which is unlawful. Fernandez v. Cano, Tex.Civ.App., 108 S. W.2d 310, writ dismissed.

In the instant case, the appellee testified that no one told her anything about the transaction and that it was her understanding that the "paper" was an authorization for Elick to sell the land to Yelderman.

■ It is the established law in this State that hearsay evidence, though not objected to, has no weight or probative force. Panhandle & S. F. Ry. Co. v. Curtis, Tex.Civ.App., 190 S.W. 837; Texas Midland R. Co. v. Cummer Mfg. Co., Tex. Civ.App., 207 S.W. 617; Sinclair Refining Co. v. Womack, Tex.Civ.App., 66 S.W.2d 402.

In the case of Whitfield v. Diffie, Tex. Civ.App., 105 S.W. 324, 326, the facts are similar in all material respects to those in the instant case. In that case the Court said: "Now, the testimony relied on to prove the trust sought to be ingrafted on appellee's deed was that of Mrs. M. J. Long alone, unless corroborated by the testimony of other witnesses found in the record. * * * The evidence is undisputed that the negotiations for the transfer of the land to Diffie were made by Mrs. Long during the absence of her husband from home, and that, whatever knowledge or understanding he had as to the purpose and effect of the deed to Diffie, other than is expressed therein, was based upon statements made to him by his wife and son in the absence of Diffie. This testimony was therefore hearsay as to Diffie, and not binding upon him."

The witness Yelderman testified that he had the impression from Elick that the Schillers were to retain the royalty which he was not getting in his purchase.

■ It is also the established rule in this State that proof of what was said by the parties to a suit which tends to throw any light or understanding of the parties as to the kind of deed that would be executed would be admissible but not the witnesses' understanding of the matter. Hume v. Darsey, Tex.Civ.App., 154 S.W. 255.

It is also well established that "the principle which bars admission of the witness' 'understanding' of a matter also precludes receipt of his 'belief' or 'impression'

thereon, these being merely other names for the product of his ratiocination." 19 Tex. Jur. 120, § 82.

In the early case of Hammond v. Hough, 52 Tex. 63 the Supreme Court of this State in passing on a similar state of facts said, "How he understood the matters testified to, did not appear; and the fact that he so understood them, was not, of itself admissible evidence."

The only other testimony offered by appellee was that of her brother-in-law, Paul Schiller. His testimony is directly contrary to the written instruments in evidence and does not purport to be direct testimony as to the original agreement between Elick and the Schillers.

While appellee's case is based to a large extent on the question of whether appellant was the agent of appellee and her deceased husband at the time of the purchase of said 242 acres of land by appellant from them, the testimony which indicated that such an agency existed was contrary to the express terms of the written agreement between Leo Schiller and appellant. In the event the testimony of the witnesses to the effect that it was their impression or understanding that this agency existed is eliminated under the rule announced in above authorities, there is we think insufficient testimony in the record to establish this agency.

Under his second point of error appellant contends that the appellee's cause of action for damages, if any, was barred by the two-year statute of limitations.

Appellee pleaded that appellant sold royalty acres to various parties who were innocent purchasers without notice and that she was entitled to recover from appellant the highest market value received therefor. Appellant pleaded in addition to a denial of agency that appellee's cause of action for damages, if any, accrued more than two years before the commencement of this suit and was barred by limitations under Article 5526, Sec. 4, Revised Civil Statutes. By supplemental pleading appellee alleged that she learned of appellant's alleged fraudulent conduct twelve or fifteen months prior to the filing of the suit.

It is undisputed that appellee's cause of action arose, if at all, on January 22, 1946, or more than three years and ten months prior to the filing of appellee's first amended original petition on December 9, 1949.

The burden of proof was on appellee to establish when the fraud was discovered, or when, by the use of reasonable diligence, she could have discovered appellant's fraudulent acts. Carr v. McGinley Corporation, Tex.Civ.App., 105 S.W.2d 410.

In the case of McBurney v. Daughety, Tex.Civ.App., 19 S.W.2d 113, it was held that one seeking to avoid limitations on the ground of having exercised reasonable diligence to discover fraud must allege the facts on which he relies.

In 20 Tex.Jur. it is said that: "The fact that one has placed confidence in another is not sufficient to excuse lack of diligence in investigation. Nor may a person wantonly close his eyes after discovery of facts sufficient to put him on inquiry."

In the case of Logan v. Taylor, Tex.Civ. App., 118 S.W.2d 1094, 1096, it is said: "Appellee contends * * * he had known and reposed great trust and confidence in appellant * * *. Such is a mere conclusion of the pleader and alleges no fact, business transaction, or other incident showing any confidential relationship existing between them. * * * The law is settled that, 'when there is no fiduciary relationship, the mere fact that one person has confidence in another does not excuse lack of diligence in investigating; hence confidence reposed by one party to a contract in the performance by the other party of his obligation will not toll the statute in favor of the party reposing the confidence. * * *'"

In the instant case, appellee did not offer any testimony to the effect that her husband did not learn all the facts except that "she never heard of him knowing about it".

In the instant case, the record does not disclose that appellee discharged her burden of showing that her failure to discover the facts alleged by her to be in defraud of her rights was due to any fact

or facts which would suspend the running of the Statute of Limitations as a matter of law.

It follows, we think, that the judgment of the trial court must be reversed and judgment here rendered that appellee take nothing by her suit.

Reversed and rendered.

### On Motion for Rehearing.

In her motion for rehearing appellee has called our attention to certain misstatements of the record contained in the Court's original opinion, including a misstatement of the amount credited to the account of Leo and Olga Schiller by the bank, and a misstatement of the testimony of Mrs. Schiller in which we state that: "It is undisputed that she (Mrs. Schiller) was told nothing" about certain parol agreements between her deceased husband and appellant. These misstatements have been corrected in the original opinion.

The above corrections in no way affect the final determination of this cause as embodied in our original opinion. Motion for rehearing is overruled.