A. H. BEAZLEY et al., Appellants,

v.

Eugenia S. BEAZLEY, Appellee.

No. 5003.

Court of Civil Appeals of Texas.

Beaumont.

Dec. 16, 1954.

Rehearing Denied Jan. 5, 1955.

Bracewell & Tunks, Houston, Cam Harrell, Conroe, James A. Clark, Houston, for appellant.

David R. White, Uvalde, Campbell & Foreman, Livingston, Robert F. Atkins, ·Cold Springs, for appellee.

R. L. MURRAY, Chief Justice.

This is an appeal from an adverse judgment in a trespass to try title case in San Jacinto County. The appellants are A. H. Beazley et al. and Eugenia S. Beazley is the appellee.

The land involved is 187½ acres in San Jacinto County. This was acquired by Dr. W. H. Beazley in 1882 from Monroe C. Wiley. The tract involved was known as the West one-half of the Wiley farm. Dr. Beazley acquired the property while married to his first wife, Mary Beazley. Mrs. Mary Beazley, Dr. Beazley's first wife, was the mother and grandmother of the appellants. She died intestate in 1893. Dr. Beazley and the appellee, Eugenia S. Beazley, were married in 1895. During the lifetime of Mrs. Mary Beazley, Dr. Beazley and Mary Beazley conveyed an undivided one-half interest in the Wiley farm to his brother, Jack Beazley. In 1895 Dr. Beazley conveyed the land involved to Eugenia S. Beazley as her separate property. This deed described and purported to convey the East one-half of the Wiley farm and recited that the other one-half was owned by his brother Jack Beazley. In 1917 Dr. Beazley made a second deed whereby he conveyed the West one-half of the Wiley farm to Mrs. Eugenia S. Beazley, although at that time the heirs of Jack Beazley still owned an undivided interest. On March 14, 1919 the heirs of Jack Beazley conveyed the West one-half of the Wiley farm to the appellee, Eugenia Beazley, as her separate property. This deed of conveyance was filed for record July 28, 1919. The second deed from Dr. Beazley to Eugenia S. Beazley was filed for record February 19, 1917. Dr. Beazley died in 1919.

Mrs. Eugenia S. Beazley has been in continuous possession of the property by tenants from 1919 to the date of the trial in 1954 and had paid taxes on it for more than 50 years, payments being made each year before delinquency except in one year, 1931. The 1931 taxes were paid but after they became delinquent. She had her own livestock on the land continuously, made improvements on the land, had it completely enclosed by fences capable of turning livestock. She executed various timber deeds and oil and gas leases and easements on the property in 1905, 1924, 1927, 1932, 1942, 1947, 1948, 1951 and 1953. None of the appellants, children and grandchildren of Dr. Beazley, deceased, ever paid or offered to pay any taxes on the land. They knew that the appellee was using the property and paying the taxes.

Mrs. Eugenia S. Beazley brought the suit in trespass to try title in May, 1953 against the appellants, who were the children and grandchildren of Dr. Beazley, deceased. They answered by pleas of not guilty and also brought a cross action for an undivided one-half interest in the property. The case was tried to a jury, which returned a verdict favorable to the appellee. Judgment was rendered and entered for the appellee on the verdict. The jury in its verdict found in favor of the appellee under the 5, 10, and 25 year statutes of limitations. The verdict also found that Dr. Beazley conveyed certain tracts of land to the appellants and each of them for the purpose of effecting an equitable partition of the property of W. H. Beazley and his first wife, Mary Beazley. The verdict further found that the appellants accepted the conveyances as such equitable partition.

After the entry of such judgment the appellants brought their appeal to this court for review of the judgment.

The appellants contend on appeal that the appellee and the appellants, after the deeds to Eugenia Beazley, were cotenants even though by the 1917 deed Dr. Beazley purported to convey to Eugenia Beazley the entire 187 acre tract. They say that upon the death of their mother, Mrs. Mary Beazley, title to an undivided one-half interest vested in them and that when Dr. Beazley made his conveyance to Eugenia Beazley and such deed was filed for record the relationship between the parties as cotenants was not disturbed.

They say that Mrs. Eugenia Beazley, being the wife of their father Dr. Beazley, was not a stranger to the title and since they were not holding as heirs of Dr. Beazley but became the owners of an undivided one-half interest by inheritance from their mother, Mary Beazley, the recording of the deed from Dr. Beazley to Eugenia Beazley did not operate as constructive notice to them so as to begin the running of statutes of limitation in favor of Eugenia Beazley against them. They rely upon the cases of Lynch v. Lynch, Tex.Civ.App., 130 S.W.

461; Brooks v. Shaw, Tex.Civ.App., 159 S.W.2d 206; Bruni v. Vidaurri, 140 Tex. 138, 166 S.W.2d 81.

The appellee on the other hand contends that under the rule announced in Jones v. Siler, 129 Tex. 18, 100 S.W.2d 352 she was a stranger to the title and that the deed purported to pass title to the entire tract of land to her and not merely Dr. Beazley's interest in the property, and thus the statutes of limitation began to run in her favor from the time the deeds to her were filed. The court in the special issues submitted to the jury, inquired only as to the period of time after the death of Dr. Beazley as to the various limitation periods.

■ Appellants' first four points, which present their contentions in this matter are overruled. When Dr. Beazley executed the deed to Mrs. Eugenia Beazley, purporting to convey the entire premises to her, and she placed it of record, and she also filed for record the deed from the heirs of Jack Beazley, deceased, whatever semblance of cotenancy existed between her and the appellants was repudiated. Her long and continuous acts of complete dominion over the premises, before and after the death of Dr. Beazley in 1919, was so long continued, open, notorious, exclusive and inconsistent with the existence of title in others except her that the jury could rightfully find from these facts both actual and constructive notice of her adverse holding and disseizin. See: Welch v. Armstrong, Tex.Civ.App., 62 S.W.2d 335; Moore v. Knight, 127 Tex. 610, 94 S.W.2d 1137; Jones v. Siler, 129 Tex. 18, 100 S.W.2d 352; Republics Production Co. v. Lee, 132 Tex. 254, 121 S.W. 2d 973; Mauritz v. Thatcher, Tex.Civ.App., 140 S.W.2d 303; Allison v. Texas Company, Tex.Civ.App., 161 S.W.2d 167.

■ The basic rule is well established that when a cotenant or a tenant in common executes a deed purporting to convey the entire premises to a third person who enters in possession thereof, claiming title to the whole, this will constitute a disseizin of the cotenants. Naylor & Jones v. Foster, 44

Tex. 599, 99 S.W. 114; McBurney v. Knox, Tex.Com.App., 273 S.W. 819.

We think that the exception to the general rule announced in Lynch v. Lynch, supra, has no application here since there is a variance in the fact situation here from that in the Lynch v. Lynch case. As pointed out in the case of Liddell v. Gordon, Tex.Civ.App., 241 S.W. 750, in the Lynch case the husband and his second wife were occupying the premises at the time of the conveyance to the second wife. The husband and wife in the Lynch case had the sole right of possession of the premises and the other cotenants therefore had no right to pursue against her title and possession and she could not be permitted to use her possession as the basis of an adverse claim. In the instant case Dr. Beazley and Mrs. Beazley did not live on the land and it constituted no part of their homestead. We think that Mrs. Eugenia Beazley was a stranger to the title to the land involved when the deeds to her were executed and filed for record, and that under all the facts here the rule announced in the cases cited above apply.

■ Appellants' 5th point complains of the trial court's action in refusing to submit all requested issues to the jury inquiring whether appellee recognized an outstanding interest in the title in others than herself. The appellee received a deed to the property from one Rosadele Beazley in 1942. She was one of the heirs of Jack Beazley, deceased. She was one of those who signed and executed the partition deed in 1919 to the appellee but she was not named in the granting clause as a grantor in the deed. In the 1942 deed it is recited that she did ratify, confirm and adopt the 1919 deed and acknowledged that she did convey her interest as though she were named in the granting clause. In 1953 Mr. White, an attorney for the appellee, sent to Mrs. Hooper, one of the appellants, a quit-claim deed to the appellee with request for her to sign it. This quit-claim deed was accompanied by a letter from the attorney which recited that the deed was needed to clear up a cloud on

the title to lands owned by Mrs. Eugenia Beazley. It further stated that unless such deeds were secured suit would have to be filed to remove cloud from title. A similar letter and quit-claim deed was sent to Mrs. Chapman, one of the appellants, in 1942. The trial court admitted it although there was no evidence that the appellee or anyone representing her had authorized it to be sent to the appellants to be signed. We do not believe that this evidence was sufficient to require the submission of the issues requested by the appellants, and no error is shown.

■ The appellee introduced in evidence an affidavit executed by one Modessett and Jeff Cochran, dated January 23, 1924 and filed for record in San Jacinto County February 1, 1924. The stated purpose of this affidavit was to show an equitable partition of the property of Mrs. Mary Beazley, the mother and grandmother of the appellants. One of the affiants, Mr. Modessett, was still living and present in person at the time of the trial. The affidavit contained the following recital:

"*The* these affiants are familiar with the distribution of the lands as made by W. H. Beazley of the lands owned by W. H. Beazley and Mary V. Beazley, such distribution having been made by the said W. H. Beazley to Carrie Bell, Hooper, Ethel Tribe, and Hamilton Beazley, and know*n* that Carrie Bell Hooper received the above mentioned 141½ acres in said above mentioned distribution; and that Ethel Tribe received a tract near to or adjoining said 141½ acres which she sold, to the affiant Jeff Cochran, and by him sold to Henry Bell, and which said place is now known as the Henry Bell place; and that the said Hamilton Beazley received a tract of land, in San Jacinto County, near the above 141½ acres commonly known as the Egypt place.

"These affain*st*s make this affai*nst* with reference to the above 141½ acres from their own knowledge and *form* knowledg*ed* gathered by reason of their

intimate acquaintance with the family history of the said W. H. Beazley, Mary V. Beazley, Carrie Bell Hooper, Ethel Tribe, and Hamilton Beazley."

The objections of the appellant to this affidavit were that one of the affiants was still present and could testify to matters contained in the affidavit and that it contained conclusions of the affiant. Under the holding in Magee v. Paul, 110 Tex. 470, 221 S.W. 254 the fact that some of the statements in the affidavit were in the form of conclusions did not prevent their admission in evidence. The same case holds that the fact that the affiant was alive did not make it inadmissible in evidence. The reason given is that because of the effect of the long lapse of time on the average human memory it would not be held that recitals in an ancient affidavit were rendered inadmissible by the fact that the affiant was yet alive.

The original deed from Dr. Beazley to the appellee in 1895 was written by him in his own handwriting and contained the following recital: "The said above described property being in no wise claimable by nor belonging to my children, they having been already allotted more than one full half of all my property in Real Estate as Community interest of their deceased mother, my first wife." We believe that the trial court did not err in submitting a special issue in regard to the equitable partition on the evidence before him, nor in receiving the affidavit in evidence as an ancient document.

■ Appellants complain of the argument of one of counsel for the appellee who stated in his argument to the jury that "If you find that Mrs. Beazley's title to this land is no good then there is not a title in San Jacinto County that is good." The trial court in approving the Bill of Exceptions made the following qualification to the Bill and the said qualifications were not excepted to:

"1. The argument as made was not as quoted above but was substantially as follows: 'If you find that plaintiff, Mrs. Beazley's title to this land is no good, then there is not a title in San Jacinto County that is good.'

"2. That the argument as made was not inflammatory or excessive.

"3. That no objection or exception was made thereto at the time of said argument, nor was it in any manner called to the attention of this Court.

"4. That no request was then made, or ever made, to this Court to instruct the jury not to consider said argument.

"5. That had such instruction been requested and called to the attention of this Court, same would have been given." No error is shown by this Bill of Exception and point of error. If the argument made was excessive or erroneous, no objection was made at the time and the trial court was given no opportunity to cure it by an instruction to the jury. The authorities, beginning with Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054 and a host of others following it, are agreed that objection to such an argument raised under such circumstances is waived and no error is shown.

■ The appellants objected to the court's failure to define in its charge the terms "cotenancy," "equitable partition" and "strangers in title." The appellants did not prepare and submit correct definitions to the trial court of the words pointed out in the objection. They did prepare and request the submission of the following special instructions:

"Defendants' Requested Special Instruction No. 1

"You are further instructed that a person having a joint or community interest in property is a co-tenant and that each co-tenant has the right and privilege of occupying the entire tract, so long as he or she does not exclude his or her co-tenants from possession.

"Defendants' Requested Special Instruction No. 2

"You are further instructed that where a co-tenant occupies the entire tract, it is his duty to pay the taxes thereon.

"Defendants' Requested Special Instruction No. 3

"You are further instructed that before a co-tenant's possession can be said to be adverse to that of his co-tenant, that there must be some clear and unequivocal repudiation of his co-tenant's claim.

"Defendants' Requested Special Instruction No. 4

"You are further instructed that before a co-tenant's possession can be said to be adverse to that of his co-tenant, that the person against whom the claim is asserted must have actual notice of the adverse possession of the claimant or that such asserted adverse possession of the claimant must be of such clear and unequivocal notoriety that such asserted claim would be presumed to be known by the other co-tenants." All of these were refused by the trial court. Appellants did not submit any requested definition of "equitable partition" or "stranger in title." In their brief the appellants say that they requested a special instruction and definition as to cotenancy, and refer us to page 21 of the transcript. Page 21 contains the above four requested Special Instructions. We are unable to determine to which one of the four the appellants refer in their brief. None of them nor all of them taken together can be considered a definition of the term cotenancy or cotenant. Rule 279, Texas Rules of Civil Procedure, provides that failure to submit a definition or explanatory instruction shall not be deemed a ground for reversal unless a substantially correct definition or explanatory instruction has been requested in writing and tendered by the party complaining of the judgment. Under the authority of this rule the appellants' Point 9 is overruled as showing no reversible error.

We believe that the court's charge was correct and that the evidence amply supports the verdict of the jury and the judgment of the court and it is affirmed.